UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
LIMMIE MICHAEL SNODDY, JR.,

                Plaintiff,

                                      **MEMORANDUM & ORDER**
      v.                                     20-CV-0281 (RPK)

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
---------------------------------------------------------x

RACHEL P. KOVNER, United States District Judge:

*Pro se* plaintiff Limmie Michael Snoddy, Jr. challenges the Commissioner of Social Security's determination that he is ineligible for federal disability insurance benefits because he is not disabled. The Commissioner has moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons given below, the Commissioner's motion is granted.

## I.    Background

### A.    Eligibility Review for Disability Insurance Benefits Applications

Federal disability insurance benefits are available to individuals who are "disabled." 42 U.S.C. § 423 *et seq.* The Act defines the term "disability" to mean an

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A). The "impairment" must stem from "anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3).

The Commissioner determines whether a claimant is entitled to disability insurance benefits in five sequential steps. If "an individual is found to be disabled (or not) at any step, the Commissioner is not required to proceed to the next step." *Williams v. Apfel*, 204 F.3d 48, 49 (2d Cir. 1999) (citing 20 C.F.R. § 404.1520(a)). The five-step disability analysis proceeds as follows:

1. The Commissioner must first determine whether the claimant "is doing substantial gainful work." *Williams*, 204 F.3d at 49; *see* 20 C.F.R. § 404.1520(b).

2. If the claimant is not doing substantial gainful work, the Commissioner must then determine whether the claimant has a "severe impairment" that limits his or her capacity to do work-related activities. *Williams*, 204 F.3d at 49; *see* 20 C.F.R. § 404.1520(c).

3. If the Commissioner finds the claimant has a severe impairment, the Commissioner next considers whether "the claimant has an impairment that is listed in Appendix 1" to 20 C.F.R. Part 404, Subpart P. *Williams*, 204 F.3d at 49; *see* 20 C.F.R. § 404.1520(d). If the claimant has a listed impairment, the Commissioner will deem the claimant disabled and conclude the disability analysis. *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999); *see* 20 C.F.R. § 404.1520(d).

4. If the claimant does not have a listed impairment, the Commissioner must determine whether "the claimant possesses the residual functional capacity to perform [his or] her past relevant work." *Brown*, 174 F.3d at 62; *see also* 20 C.F.R. § 404.1520(e).

5. Finally, if the claimant is unable to perform his or her past relevant work, the Commissioner determines whether "the claimant is capable of performing any other work." *Brown*, 174 F.3d at 62; *see* 20 C.F.R. § 404.1520(g).

The burden of proof lies with the claimant for the first four steps of the inquiry but shifts to the Commissioner for the final step. *Brown*, 174 F.3d at 62. Even when the claimant bears the burden of proof, the Commissioner has an affirmative duty to develop the record because the review process is "essentially non-adversarial." *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 508-09 (2d Cir. 2009); *see Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008). That duty is "heightened" when, as here, the claimant is not represented by counsel. *Ericksson v. Comm'r of Soc. Sec.*, 557 F.3d 79, 83 (2d Cir. 2009); *see Rose v. Comm'r of Soc. Sec.*, 202 F. Supp. 3d 231, 239 (E.D.N.Y. 2016). Failure by the Commissioner to "fully develop[] the factual record" constitutes "legal error." *Rosa v. Callahan*, 168 F.3d 72, 80 (2d Cir. 1999).

As the Commissioner proceeds through the five-step analysis, he is required to consider four categories of evidence. *Brown*, 174 F.3d at 62. These categories are (**i**) "the objective medical facts"; (**ii**) "diagnoses or medical opinions based on such facts"; (**iii**) "subjective evidence of pain or disability testified to by the claimant or others"; and (**iv**) "the claimant's educational background, age, and work experience." *Ibid.* (citing *Mongeur v. Heckler*, 722 F.2d 1033, 1037 (2d Cir. 1983)).

### B.    Plaintiff's Disability Insurance Benefits Application

Plaintiff applied for disability insurance benefits on July 29, 2016. Certified Administrative Record 145-56 ("AR"). In his application, plaintiff alleged that he became disabled on June 1, 2016. He indicated that he could not work due to several physical limitations— congestive heart failure, left eye optical aneurysm, low blood pressure, high cholesterol, cardiac stent, glaucoma, and cataracts. AR 177-78.

In connection with his application, plaintiff filed a function report on August 28, 2016. AR 187-205. Plaintiff indicated that he had no problems with personal care and did not require reminders to take his medication. AR 194. Plaintiff reported that he was able to do activities of daily living, such as ironing, folding laundry, and occasionally cooking. *Ibid*. Regarding his ability to travel, plaintiff noted that he went outside almost every day, and could walk, drive, and use public transportation. AR 195. Plaintiff stated that his hobbies included exercising and walking, and he was in the process of joining a gym. AR 196. In response to questions about social activities, plaintiff indicated that he was able to spend time with others at least once a week, and had no problems getting along with other people. AR 196-97. Plaintiff reported that he had no problems paying attention, finishing tasks, following instructions, or remembering things. *See* AR 188-89. With regards to physical limitations, plaintiff stated that he was restricted from heavy lifting, climbing stairs, kneeling, squatting, reaching for short periods, and sitting for long periods.

AR 197.  Plaintiff reported that he could walk for up to a mile before requiring ten minutes of rest.  AR 189.

The Social Security Administration directed plaintiff to obtain a consultative examination.  AR 257-61.  Plaintiff was examined by internist Dr. Olga Yevsikova on October 4, 2016.  *Ibid.*  After receiving Dr. Yevsikova's treatment report, the Social Security Administration initially denied plaintiff's application on November 29, 2016.  AR 59-69.  The Social Security Administration found that plaintiff was not disabled because he retained the residual functional capacity to perform his previous work despite his impairments.  AR 68-69.

Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ").  AR 82-83.

### C.    The Administrative Hearing

ALJ Gloria Pellegrino presided over the administrative hearing on September 5, 2018.  AR 31-33.  At the hearing, plaintiff was represented by counsel.  AR 31.  Plaintiff testified that he suffered from a heart attack in June 2016 for which he was hospitalized.  AR 40.  Plaintiff testified that doctors performed a medical procedure in which they placed "a couple of" stents in his heart.  *Ibid.*  Plaintiff alleged that following his discharge he experienced shortness of breath and dizziness.  AR 40-41.  However, plaintiff noted that he was unsure whether those symptoms were caused by the heart attack or the medicine he was taking.  *Ibid.*  Plaintiff testified that he experienced a "mini stroke" in his left eye about eight years prior to his heart attack which rendered him completely blind in that eye.  AR 43.  In addition, plaintiff indicated that he suffered from back pain, swelling of the feet, and fatigue.  AR 42-45.

Plaintiff testified that he completed high school, on-the-job computer training, and a "city test" associated with his prior job as a computer associate.  AR 37-38.  That job required inputting

data, lifting files weighing up to ten pounds, and walking between file rooms.  AR 37-39.  Plaintiff performed this job on a full-time basis from 1982 until 2016.  AR 39.

Plaintiff reported that his medical conditions limited his physical abilities.  The ALJ asked plaintiff if he thought he could have performed his prior work in light of his current health issues, and plaintiff replied, "[m]aybe on a limited basis, but I didn't want to take the chance."  AR 41.  Plaintiff estimated he could lift a maximum of twenty to forty pounds, but only ten pounds on a daily basis.  AR 41-42.  Plaintiff testified that he could walk or stand for about thirty to thirty-five minutes before requiring a break to alleviate his back pain.  AR 42-43.  Plaintiff testified that fatigue further limited the distance he could walk and activities he could perform at home.  AR 45-46.  He stated that he periodically experienced swelling of the feet, which impacted his ability to perform daily functions.  AR 44-45.  Plaintiff's eye problems made it painful for him to read or watch television for longer than thirty minutes since strain would cause "sharp pain."  AR 43-44.

Regarding his mental health, plaintiff testified that he suffered from anxiety.  AR 49.  Plaintiff managed the anxiety by seeing a psychiatrist twice a month for talk therapy.  AR 49-50.  Plaintiff indicated that he was not prescribed any medication.  AR 50.  Asked if his anxiety impacted his everyday life, plaintiff responded, "[j]ust thoughts, my everyday—what I used to do without thinking about it and just normally just go and do it, now I'm more conscious about being careful."  AR 49-50.

After plaintiff's testimony, the ALJ solicited testimony from a vocational expert about plaintiff's employment prospects.  AR 50-56.  The ALJ asked the vocational expert whether jobs existed in the national economy for an individual with plaintiff's education, work experience, and residual functional capacity.  *Ibid.*  In describing plaintiff's residual functional capacity, the ALJ instructed the vocational expert to assume plaintiff could "perform[] light work as defined in the

5

regulations." AR 52.  The ALJ further instructed the vocational expert to assume plaintiff was limited to (**i**) the occasional climbing of ramps or stairs; (**ii**) no climbing of ladders, ropes, or scaffolds; (**iii**) no exposure to respiratory irritants; (**iv**) no hazards such as dangerous moving machinery or unprotected heights; and (**v**) occupations that did not require binocular vision. *Ibid.* The ALJ further indicated that the hypothetical individual retained sufficient vision in one eye for occupations that required near-visual acuity to read small print and avoid workplace hazards. *Ibid.*

The vocational expert replied that an individual with that residual functional capacity could not perform plaintiff's prior job as "actually performed," but could do the work as "generally performed" because such work was "sedentary as generally performed." AR 53.  In addition, the vocational expert testified that an individual with the stated residual functional capacity could perform multiple other occupations available in the national economy.  *Ibid.*  Specifically, the vocational expert opined that plaintiff could perform the three light exertional occupations of administrative clerk, file clerk, and general clerk, and the three sedentary occupations of typist clerk, clerical sorter, and receptionist.  AR 54-56.  At the end of the hearing, the ALJ asked plaintiff's counsel whether he had further questions for the vocational expert. AR 56.  Plaintiff's counsel did not have any additional questions. *Ibid.*

### D.    Medical Evidence Admitted at the Hearing

At the hearing, plaintiff introduced physical health evaluations from both treating and consultative physicians.  He also introduced a mental health evaluation from a treating psychologist.

### 1.    Physical Health Evaluations

On June 18, 2016, plaintiff was treated for a heart attack after being admitted to the hospital for symptoms of chest pain and sweating.  AR 237.  At the hospital, plaintiff was diagnosed with cardiogenic shock and myocardial infraction.  AR 236.  Physicians performed a thrombectomy on

plaintiff's heart and placed a stent in his left anterior descending coronary artery.   AR 243.

Following these procedures, doctors performed an echocardiogram of plaintiff's heart, which

showed an ejection fraction in the range of forty to forty-five percent.   AR 238.   Plaintiff was

discharged on June 20, 2016.   *Ibid.*   The discharging physician advised plaintiff to follow up with

a cardiologist and avoid overexertion.   *Ibid.*

Plaintiff visited his primary care physician, Sidharth Yadav, D.O., for five follow-up

consultations between July and August 2016.   AR 372-81.   Plaintiff's first visit with Dr. Yadav

after his heart attack was on July 1, 2016.   AR 372.   Dr. Yadav diagnosed plaintiff with

hypertension, atherosclerotic heart disease of native coronary artery without angina pectoris,

coronary angioplasty status, and ischemic cardiomyopathy.   *Ibid.*   Plaintiff denied any dizziness,

fatigue, chest pain, or lightheadedness.   *Ibid.*   In subsequent visits with Dr. Yadav, plaintiff

occasionally complained of fatigue, chest pain, dizziness, and shortness of breath.   AR 374, 376,

378, 380.

Dr. Yadav completed a cardiac residual functional capacity questionnaire on August 27,

2016.   AR 324-27.   Dr. Yadav indicated that plaintiff had a marked limitation of physical activity

and experienced the following symptoms: shortness of breath, fatigue, weakness, and dizziness.

AR 324-25.   Dr. Yadav reported that plaintiff was capable of tolerating low stress jobs, but could

not "participate in jobs requiring physical exertion due to fatigue, shortness of breath and

dizziness."   AR 325.   Dr. Yadav indicated that plaintiff could sit for two hours and stand for forty-

five minutes, continuously.   AR 326.   While plaintiff did not require a job that permitted shifting

positions at will, Dr. Yadav opined that plaintiff would need two or three thirty-minute

unscheduled breaks per eight-hour workday.   *Ibid.*   Dr. Yadav indicated that plaintiff was limited

to occasionally lifting and carrying less than ten pounds, rarely ten pounds, and never more than

twenty pounds.  *Ibid.*  Dr. Yadav further opined that plaintiff could occasionally twist and stoop, rarely crouch, and never climb ladders or stairs.  AR 327.  Dr. Yadav reported that plaintiff should avoid concentrated exposure to wetness, humidity, and noise, and all exposure to extreme temperatures, fumes, and hazards.  *Ibid.*  With regards to plaintiff's mental health, Dr. Yadav indicated that plaintiff's physical symptoms caused emotional difficulties such as depression and anxiety.  AR 325.  Plaintiff was "more anxious about various non-cardiac chest pains and physical activity."  *Ibid.*  Dr. Yadav stated that plaintiff would be expected to be absent from work about three days per month due to his health issues.  AR 327.  Finally, Dr. Yadav indicated that an echocardiogram of plaintiff's heart would be required to fully assess plaintiff's impairments.  *Ibid.*

On September 12, 2016, plaintiff saw Daniel Levy, MD, for an echocardiogram.  AR 391-93.  The assessment showed a left ventricular ejection fraction between sixty and sixty-five percent.  *Ibid.*  The report indicated that plaintiff's heart measurements were within the normal range.  *Ibid.*

Plaintiff followed up with Dr. Yadav for a primary care visit on November 29, 2016.  AR 443.  Dr. Yadav noted that plaintiff complained of a few episodes of shortness of breath, but denied any fatigue, dizziness, syncope, or palpitations.  *Ibid.*  Plaintiff continued to be treated for his heart conditions with medications and a low sodium diet.  *Ibid.*  Between June 2017 and August 2018, plaintiff saw Dr. Yadav another four times.  AR 441, 482, 484, 486.  Dr. Yadav's findings were normal, except for one occasion where Dr. Yadav found diminished but symmetrical peripheral bilateral pulses.  AR 441.  Plaintiff denied experiencing any chest pain or shortness of breath in these visits.  AR 441, 482, 484, 486.  On January 23, 2018, plaintiff reported "good exercise tolerance with no limitations in his daily tasks."  AR 486.

8

Regarding his left eye blindness, plaintiff submitted medical records dating back to 2014. AR 262-321.  Plaintiff's medical records reported that he had left eye central retinal vein occlusion with occasional floaters.  *Ibid.*  In 2015, plaintiff was diagnosed with glaucoma by ophthalmologist Dr. Nikola Ragusa.  AR 264-69.  An evaluation with Dr. Ragusa conducted on August 15, 2016 found that plaintiff had 20/30 visual acuity in the right eye and CF3 ("counts fingers at three feet away") in the left eye.  AR 313.  On June 29, 2018, plaintiff saw Dr. Ronald Caronia for a complete eye exam.  AR 497.  Dr. Caronia found that plaintiff had a visual acuity of 20/20 in the right eye, and neurovascular glaucoma of the left eye.  AR 498, 500.

### 2.      Consultative Examinations

On October 4, 2016, plaintiff attended a consultative examination with Dr. Olga Yevsikova.  AR 257.  In his account to Dr. Yevsikova, plaintiff indicated that he had a history of heart disease, suffered a heart attack on June 2016, and underwent stent placement and valve repair. *Ibid.*  Dr. Yevsikova noted that plaintiff denied chest pain but had shortness of breath on exertion. *Ibid.*  Plaintiff reported that he could and sit and stand for twenty consecutive minutes, and walk up to three city blocks before needing a break.  *Ibid.*  Dr. Yevsikova reported that plaintiff had a history of asthma since 2011.  *Ibid.*  However, plaintiff "never visited the emergency room for asthma" and had not experienced symptoms of asthma in over a year.  *Ibid.*  Dr. Yevsikova found that plaintiff was "almost blind" in the left eye, but retained 20/30 vision in the right eye and combined 20/30 vision.  AR 257-58.  Plaintiff showed no acute distress with normal gait, 5/5 strength in upper and lower extremities, and full range of motion with upper extremities but reduced range of motion in the hips, knees, and ankles.  AR 258-59.

After her examination, Dr. Yevsikova assessed a moderate limitation to heavy lifting, heavy carrying, pulling, pushing, and bending.  AR 260.  Dr. Yevsikova opined plaintiff had a moderate limitation to prolonged walking, standing, and sitting, and to climbing stairs.  *Ibid.*  In

terms of sight, Dr. Yevsikova reported plaintiff had a marked limitation to distal vision and fine visual acuity with his left eye.  *Ibid.*  She further recommended that plaintiff avoid respiratory irritants, extreme temperatures, unprotected heights, activities that could put him at a risk of fall, and any activity requiring moderate exertion.  *Ibid.*

On November 17, 2016, Dr. A. Vinluan, a state agency medical consultant, evaluated plaintiff's residual functional capacity based on a review of the record.  AR 64.  Dr. Vinluan assessed plaintiff to have the residual functional capacity to perform light work.  *Ibid.*

### 3.    Mental Health Evaluations

Between January and October 2017, plaintiff attended seven therapy sessions with Dr. Felicia Ivey-Torres, Ph.D, LMHC, to address his anxiety and depression.  AR 522-35.  During plaintiff's first visit with Dr. Ivey-Torres on January 16, 2017, Dr. Ivey-Torres diagnosed him with adjustment disorder with mixed anxiety-and-depressed mood disorder.  AR 532.  Plaintiff's mental status examinations displayed him as having normal eye contact, normal motor activity, normal speech, full orientation, intact short-term memory, fair long-term memory, average intelligence, coherent thought process, and no delusions or hallucinations.  AR 523-36, 529-30, 523-35.  In her treatment notes, Dr. Ivey-Torres indicated that plaintiff was being treated for anxiety and depression regarding his cardiac status.  AR 522-39.  Dr. Ivey-Torres reported that plaintiff was not receptive to a referral for a psychiatric consult, attended sessions infrequently, and at times seemed unmotivated with regards to his treatment.  AR 523, 529, 531.  Although plaintiff reported increased social isolation, he also indicated that he attended some social events and frequently visited his local gym.  AR 525, 527.  Plaintiff decided to discontinue therapy on October 5, 2017.

AR 525.  Dr. Ivey-Torres discharged plaintiff on October 30, 2017, noting that he did not appear

to be in a crisis, was not taking medication, and had declined referral to a psychiatrist.  AR 523.

### E.  The ALJ's Decision

The ALJ issued a decision on October 31, 2018.  AR 12, 24.  The ALJ concluded that

plaintiff was not disabled under Title II of the Social Security Act and denied his application for

disability insurance benefits.  AR 15-24.  In reaching that decision, the ALJ proceeded through the

five-step analysis set forth in 20 C.F.R. § 404.1520 and considered the hearing testimony as well

as plaintiff's extensive medical records.  *Ibid.*

Based on the hearing testimony and the evidentiary record, the ALJ made the following

findings:

- **Step One.**  Plaintiff had not engaged in substantial gainful activity since June 1, 2016, the alleged onset date.  AR 17; *see* 20 C.F.R. §§ 404.1520(b), 404.1571 *et seq.*

- **Step Two.**  Plaintiff had the following severe impairments: congestive heart failure, cardiac stent, obesity, bronchial asthma, and left eye blindness.  AR 17; *see* 20 C.F.R. § 404.1520(c).

- **Step Three.**  Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments that would establish a presumptive disability under the regulations.  AR 19; *see* 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526.

- **Step Four.**  Plaintiff had the "residual function capacity" to perform light work as defined in 20 C.F.R. § 404.1567(b), with the following limitations: "occasional climbing of ramps or stairs; no climbing of ladders, ropes or scaffolds; no exposure to respiratory irritants; no hazards such as dangerous moving machinery or unprotected heights; occupations that do not require binocular vision, but the hypothetical individual retains sufficient visual acuity in one eye for occupations that require near visual, to read small print (such as newsprint), and avoid workplace hazards."  AR 19; *see* 20 C.F.R. § 404.1520(e).

- **Step Five.**  Plaintiff retained the ability to perform past relevant work as a data entry clerk. AR 22; *see also* 20 C.F.R. §§ 404.1520(g), 404.1565.  After consulting with the vocational expert at the administrative hearing, the ALJ concluded that plaintiff also retained the ability to perform multiple light exertion jobs that existed in significant numbers in the national economy, including file clerk, general clerk, and sorter (clerical).  AR 23-24; *see* 20 C.F.R. § 404.1520(g).

Plaintiff sought review of the ALJ's decision from the Social Security Administration Appeals Council.  AR 139-41.  The Appeals Council denied plaintiff's appeal on November 4, 2019, providing plaintiff with a final decision by the Commissioner.  AR 1-4.  Plaintiff then filed this action, proceeding *pro se*.  *See* Dkt. #1.

## II.    Legal Standard for Judicial Review

Claimants who are denied disability benefits by the Social Security Administration may seek judicial review.  42 U.S.C. § 405(g).  In reviewing a final decision of the Commissioner, the court does not "decide *de novo* whether a claimant was disabled" or take a fresh pass at the ALJ's five-step analysis under the Social Security Act.  *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (citations omitted).  Instead, the court's review is limited to two areas.  *Shaw v. Chater,* 221 F.3d 126, 131 (2d Cir. 2000).

First, the court reviews the Commissioner's decision for legal error.  *Ibid.*  This inquiry entails asking whether the claimant has had "a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the Act."  *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990); *Drake v. Comm'r of Soc. Sec.*, No. 15-CV-5604 (DLI), 2018 WL 1556882, at *5 (E.D.N.Y. Mar. 29, 2018) (quoting *Cruz*, 912 F.2d at 11).

Second, the court reviews whether "substantial evidence" supports the Commissioner's decision.  *Shaw*, 221 F.3d at 131 (quoting 42 U.S.C. § 405(g)); *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999).  The Second Circuit has described substantial-evidence review as "a very deferential standard of review—even more so than the 'clearly erroneous' standard."  *Brault v. Soc. Sec. Admin., Comm'r of Soc. Sec.,* 683 F.3d 443, 447 (2d Cir. 2012) (citing *Dickinson v. Zurko,* 527 U.S. 150, 153 (1999)).  Courts applying this standard will not disturb the Commissioner's factual findings if a reasonable mind could find "adequate" support for them.

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).   Nevertheless, the Commissioner's findings must be supported by more than a "mere scintilla" of evidence.   *Ibid.*   To determine whether the Commissioner's determination is supported by substantial evidence, the reviewing court must "examine the entire record"—including "contradictory evidence and evidence from which conflicting inferences can be drawn." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (internal quotation marks omitted).   When substantial evidence in the record supports the Commissioner's findings, those findings are conclusive and must be upheld.   42 U.S.C. § 405(g); *see Cichocki v. Astrue*, 729 F.3d 172, 175-76 (2d Cir. 2013).

After completing its review, the district court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing" the Commissioner's decision. 42 U.S.C. § 405(g).   Remand is appropriate when "the Commissioner has failed to provide a full and fair hearing, to make explicit findings, or to have correctly applied the regulations." *Rose*, 202 F. Supp. 3d at 239.   A remand is also appropriate "[w]here there are gaps in the administrative record." *Rosa*, 168 F.3d at 82-83 (quoting *Sobolewski v. Apfel*, 985 F. Supp. 300, 314 (E.D.N.Y. 1997)).   A district court may also remand for consideration of new evidence, but "only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *Schaal v. Apfel*, 134 F.3d 496, 596 (2d Cir. 1998) (quoting 42 U.S.C. § 405(g)).   The court has discretion to remand the case with or without a rehearing.   42 U.S.C. § 405(g).

### III.   Analysis

As explained below, the Commissioner has shown that the ALJ applied the law correctly and entered factual findings that were supported by substantial evidence. *Shaw*, 221 F.3d at 131 (quoting 42 U.S.C. § 405(g)).   And new evidence submitted by plaintiff to this Court does not

warrant remand, because it does not pertain to the relevant period of disability and because plaintiff does not show good cause for his failure to submit it to the Commissioner. *See Schaal*, 134 F.3d at 596.

### A.   The Commissioner Has Shown He Applied the Correct Law and Entered Factual Findings Supported by Substantial Evidence.

The Commissioner has shown that he properly applied the five-step sequential process in considering plaintiff's disability insurance benefits application and that substantial evidence supports the Commissioner's determination at each step. Plaintiff's alleged worsening symptoms and new medical records, as discussed below, do not warrant a different finding.

### 1.   Steps One Through Three

Steps one through three are satisfied. The record, which includes plaintiff's certified earnings and medical history, AR 163-68, supports the ALJ's finding that plaintiff had not engaged in substantial gainful activity since June 1, 2016, AR 18. Likewise, plaintiff's medical records are consistent with the ALJ's finding at step two that plaintiff's congestive heart failure, cardiac stent, obesity, bronchial asthma, and left eye blindness were severe impairments. AR 17-19. As required by the regulations, each of these impairments lasted for a continuous period of more than twelve months and significantly affected plaintiff's ability to perform basic work activities. *See* 20 C.F.R. §§ 404.1509, 404.1520(c).

At step three, the ALJ properly concluded that plaintiff did not have one of the listed impairments in the social security regulations or a medical equivalent. *See* AR 17-19; 20 C.F.R. §§ 404.1525, 404.1526. In making this determination, consistent with 20 C.F.R. § 404.1527, the ALJ considered the medical opinions in the record and noted that "no treating, examining, or non-examining source rendered an opinion that [plaintiff's] impairments, singly or in combination, medically equaled the criteria of any listed impairment." AR 19. The ALJ reviewed the entire

record and found that plaintiff's impairments did not rise to the severity that would warrant a *per se* finding of disability.  AR 17-19.  The ALJ's finding is supported by substantial evidence. Evaluations of plaintiff's heart condition, estimating a left ventricular ejection fraction around sixty to sixty-five percent, did not meet the listings under section 4.00 (cardiovascular system). AR 19, 391-93; *see* 20 C.F.R. § Pt. 404, Subpt. P, App. 1.  Plaintiff's left eye blindness did not meet the requirements under section 2.00 (special senses and speech) because the right eye's visual acuity was within normal limits.  AR 19, 258; *see* 20 C.F.R. § Pt. 404, Subpt. P, App. 1.  Plaintiff's asthma did not qualify as a *per se* disability under section 3.00 (respiratory disorders) because the emergency room visit requirement was not met.  AR 19, 247; *see* 20 C.F.R. § Pt. 404, Subpt. P, App. 1.

Furthermore, the ALJ correctly assessed plaintiff's alleged mental impairments at steps two and three.  *See* 20 C.F.R. § 404.1520a; *see also Kohler v. Astrue*, 546 F.3d 260, 265-66 (2d Cir. 2008) (summarizing the process for evaluation of mental impairments under the social security regulations).  After evaluating plaintiff's statements and medical record, the ALJ determined plaintiff exhibited "no limitation" in any of the four broad functional areas for mental impairment. AR 18-19; *see* 20 C.F.R. §§ 404.1520a(c)(3), 404.1521.  The ALJ's findings are supported by substantial evidence, including plaintiff's own testimony.  See AR 18, 188-97, 522-39.

## 2.  Step Four

At step four, the ALJ must determine the claimant's residual functional capacity in light of the claimant's physical and mental impairments.  *See* 20 C.F.R. § 404.1520(e).  A claimant's residual functional capacity is the most he or she can do despite her limitations.  20 C.F.R. § 404.1545.  "The ALJ must assess the claimant's residual functional capacity based on all the relevant medical and other evidence of record, and take into consideration the limiting effects of all the claimant's impairments."  *Rivera v. Comm'r of Soc. Sec.*, 368 F. Supp. 3d 626, 647

(S.D.N.Y. 2019); *see* 20 C.F.R. § 404.1545(a)(3) (effective as to claims filed before March 27, 2017).  In evaluating a claimant's residual functional capacity, the ALJ considers the record as a whole and is not required to accept the opinion of any medical source in its entirety.  *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an residual functional capacity finding that was consistent with the record as a whole."); *Pellam v. Astrue*, 508 F. App'x 87, 89 (2d Cir. 2013) ("There is no requirement that the agency accept the opinion of a consultative examiner concerning a claimant's limitations.").  Generally, a treating physician's opinion is given "controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence." *Smith v. Berryhill*, 740 F. App'x 721, 724 (2d Cir. 2018) (quoting *Rosa*, 168 F.3d at 78-79); *see* 20 C.F.R. § 404.1527(c)(2).  If the opinion of a treating physician is not deemed controlling, the ALJ must decide the proper weight to assign the opinion considering: (**i**) the examining relationship; (**ii**) the treatment relationship, including the length, nature, and extent of the relationship; (**iii**) the supportability of the medical opinion, particularly medical signs and laboratory findings; (**iv**) the consistency of the medical opinion with the record as a whole; (**v**) whether the opinion is from a specialist; and (**vi**) other factors that may support or contradict the opinion.  *See* 20 C.F.R. § 404.1527(c); *Yucekus v. Comm'r of Soc. Sec.*, 829 F. App'x 553, 557 (2d Cir. 2020).  Courts in this circuit have found no error where an ALJ assigns an opinion less than controlling weight because of its inconsistency with the overall record.  *See Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) ("[T]he opinion of the treating physician is not afforded controlling weight where, as here, the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts.");

*Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) (stating that a treating physician's opinion is not controlling when inconsistent with "other substantial evidence in the record").

Here, the ALJ properly evaluated "all of the relevant medical and other evidence" in assessing plaintiff's residual functional capacity, consistent with social security regulations.  20 C.F.R. § 404.1545(a)(3).  The ALJ correctly assessed plaintiff's symptoms following the two-step process required by 20 C.F.R. § 404.1529.  *See* AR 20.  Likewise, the ALJ properly weighed each medical opinion while considering the factors outlined in 20 C.F.R. § 404.1527(c).  The ALJ gave "great weight," but not "controlling weight," to the portions of Dr. Yadav's opinion that limited plaintiff to performing light work.  AR 22.  Dr. Yadav's opinion was consistent with the totality of the evidence, but he did not treat or examine plaintiff.  *Ibid.*  "Limited weight" was accorded to aspects of Dr. Yadav's concerning plaintiff's attention and concentration, and sitting, standing, and lifting restrictions.  *Ibid.*  Other medical evidence in the record, including mental status evaluations and numerous normal physical examinations, were contrary to Dr. Yadav's findings in those areas.  *Ibid.*  The ALJ also correctly gave Dr. Vinluan's opinion "some weight" rather than "controlling weight."  *Ibid.*  Although the medical consultant did not treat or examine plaintiff, physical examinations supported Dr. Vinluan's conclusion that plaintiff retained a "light residual functional capacity."  AR 22, 64.  Likewise, the ALJ properly weighed Dr. Yevsikova's opinion and gave it "great weight" instead of "controlling weight."  AR 22.  Dr. Yevsikova examined the plaintiff, and her physical-exertion and environmental-exposure limitations were consistent with the overall record.  AR 22, 260.  However, Dr. Yevskikova's indication that plaintiff had a "marked limitation" in his visual ability was inconsistent with her finding that plaintiff retained combined 20/30 vision.  *Ibid.*; *see* 20 C.F.R. § Pt. 404, Subpt. P, App. 1 (indicating that 20/30 visual acuity corresponds to ninety percent visual acuity efficiency).  In sum, the ALJ correctly weighed the

medical opinions, and adequately explained her decisions by assessing each opinion's consistency with the "record as a whole." *See* 20 C.F.R. § 404.1527(c)(4).

Further, the ALJ's finding that plaintiff retained the residual functional capacity to perform "light work" with additional restrictions is supported by substantial evidence. *See* AR 19-22. The Social Security Administration defines "light work" as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b). Here, considering the "totality of the objective evidence," the ALJ determined that plaintiff had the residual functional capacity to perform light work with additional limitations in physical movement, environmental exposure, hazardous activities, and work requiring binocular vision. AR 19-22.

The ALJ's determination was supported by substantial evidence. Plaintiff's own testimony at the administrative hearing supported the ALJ's conclusion. Plaintiff testified that he could carry up to thirty or forty pounds, and regularly lifted up to ten pounds. AR 42. Plaintiff's functional report to the Social Security Administration also supported the ALJ's conclusion. In the report, plaintiff indicated that he frequently exercised, was in the process of joining a gym, and was only precluded from "heavy lifting." AR 196-97. Plaintiff reported that he could walk for up to a mile and could not sit or stand for long periods of time. AR 197. Medical opinions likewise supported the ALJ's determination. Dr. Yadav indicated in the cardiac residual functional capacity assessment that plaintiff was able to walk five city blocks without rest, stand for forty-five minutes at a time, and sit for two hours consecutively. AR 388. Dr. Yadav also stated that plaintiff could

18

occasionally carry or lift up to ten pounds.  AR 389.  Dr. Yevsikova noted that plaintiff had a normal gait and stance, could walk without difficulty, and used no assistive devices.  AR 258.  Dr. Yevsikova further concluded that plaintiff had moderate restrictions to heavy lifting, heavy carrying, pulling, pushing, and bending; prolonged walking, standing, and sitting; and climbing stairs.  AR 260.  Furthermore, the ALJ considered plaintiff's medical records regarding his left eye, AR 262-321, 402-39, and found that plaintiff retained visual acuity to perform some occupations, AR 22.

Consistent with the ALJ's decision, courts in this circuit have held that moderate limitations in physical exertion and impaired visual acuity are not inconsistent with an ability to perform light work.  *See Robert R. v. Comm'r of Soc. Sec.*, No. 19-CV-680 (TWD), 2020 WL 5531551, at *5-8 (N.D.N.Y. Sept. 15, 2020) (affirming decision that a plaintiff with combined 20/30 vision and moderate limitations in bending, lifting, reaching, and turning of the head could perform light work with some additional limitations); *Antoine T. v. Comm'r of Soc. Sec.*, No. 18-CV-232 (CFH), 2019 WL 2327937, at *6-8 (N.D.N.Y. May 31, 2019) (affirming decision that a plaintiff with a severe vision impairment and "moderate restriction to walking, standing, and sitting long periods, bending, stair climbing, lifting and carrying" could perform light work); *Ekes v. Berryhill*, No. 17-CV-122 (HKS), 2019 WL 144918, at *2-3 (W.D.N.Y. Jan. 9, 2019) (affirming decision that a plaintiff with corrected vision of 20/200 and 20/20 in the left and right eye, respectively, and "mild to moderate limitations for prolonged walking, bending, kneeling and overhead reaching" could perform light work with some additional limitations).  Therefore, the ALJ's finding at step four that plaintiff retained the residual functional capacity to perform light work with additional restrictions is not error.

### 3.      Step Five

At step five, the Commissioner has the "burden of proving that the claimant still retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa*, 168 F.3d at 82.  Social Security regulations require an ALJ to first assess whether a claimant can perform his or her past relevant work considering his or her residual functional capacity.  *See* C.F.R. § 404.1560(b).  The regulations also provide that an ALJ may consult a vocational expert concerning the "physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy."  *Id.* § 404.1560(b)(2).

In this case, the ALJ determined that plaintiff was able to perform his past relevant work as a data entry clerk.  AR 22.  Plaintiff had actually performed this work at the medium exertion level, but at the administrative hearing, the vocational expert testified that it was "generally performed" at the sedentary level.  AR 23.  The vocational expert also testified that plaintiff could perform this work given the ALJ's residual functional capacity of light work with limitations.  AR 52-53.  The ALJ found that the past work was relevant work because it met the recency, duration, and substantiality requirements of 20 C.F.R. § 404.1565, and plaintiff was capable of performing the job as generally performed in the national economy.  AR 22-23.

In addition, the ALJ found that other jobs existed in the national economy that plaintiff could perform considering his residual functional capacity.  AR 23.  The vocational expert provided three "light exertion" jobs—administrative clerk, file clerk, and general clerk—which plaintiff could perform and which would require little vocational adjustment.  AR 52-54.  The vocational expert also provided three jobs in the sedentary category—typist clerk, sorter (clerical), and receptionist—available to an individual with plaintiff's vocational background and residual functional capacity.  *Ibid.*  The ALJ included both light and sedentary level jobs when explaining

her decision in plaintiff's case.  *See* AR 24.  Accordingly, the ALJ did not err in concluding that plaintiff was not disabled.

**B.      Plaintiff Fails to Identify *Bona Fide* Errors in the Commissioner's Decision.**

Plaintiff argues that the ALJ's decision was erroneous, not supported by substantial evidence, and contrary to law.  *See* Compl. 2 (Dkt. #1).  Plaintiff alleges that he is disabled because of  heart failure, poor eyesight in the left eye, a heart attack in 2016, and a subsequent heart attack in 2019.  *Id.* at 1.  But plaintiff does not point to any specific evidence which he believes the ALJ erroneously weighed or overlooked.  Instead, plaintiff restates his symptoms, admits he was "able to function in a part time capacity" following his first heart attack, and claims that his condition worsened after a second heart attack.  Pl.'s Ltr. Dated Feb. 3, 2020 1 (Dkt. #5) ("Feb. 3 Ltr.").  Plaintiff's allegations are conclusory and therefore do not warrant remand.  *See Sweeney v. Barnhart*, 472 F. Supp. 2d 336, 343 (E.D.N.Y. 2007) (finding that *pro se* plaintiff's complaint and motion papers were conclusory and insufficient because they "provide no grounds for his appeal of the Commissioner's decision"); *DeJesus v. Astrue*, 762 F. Supp. 2d 673, 686 (S.D.N.Y. 2011) (same); *Casiano v. Apfel*, 39 F. Supp. 2d 326, 328 (S.D.N.Y. 1999) ("[*Pro se* plaintiff's] allegations are overly broad and conclusory, and without more, are not sufficient to defeat the Commissioner's motion for judgment on the pleadings."), *aff'd*, 205 F.3d 1322 (2d Cir. 2000)

**C.      New Evidence Introduced by Plaintiff Does Not Warrant Remand**

Plaintiff submitted several letters in which he argues that this action should be remanded for consideration of new evidence.  *See* Feb. 3 Ltr. 2-9; Pl.'s Ltr. Dated Aug. 28, 2020, at 2, 7-10 (Dkt. #15) ("Aug. 28 Ltr."); Pl.'s Resp. to Mot. for J. on Pleadings Dated Sept. 28, 2020, at 2-6 (Dkt. #16) ("Sept. 28 Resp."); Pl.'s Resp. to Mot. for J. on Pleadings Dated Oct. 5, 2020, at 2-3 (Dkt. #17) ("Oct. 5 Resp.").  Construing these "pleadings 'to raise the strongest arguments that they suggest,'" plaintiff argues that the ALJ incorrectly discounted the severity of his physical

21

impairments.  *Rose*, 202 F. Supp. 3d at 239 (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)).  Plaintiff suggests that he is entitled to disability insurance benefits because new evidence shows that his "condition was far more serious than previously thought." *Pollard v. Halter*, 377 F.3d 183, 193 (2d Cir. 2004).

In general, "[e]vidence not contained in the administrative record may not be considered when reviewing the findings of the Commissioner."  *Casiano*, 39 F. Supp. 2d at 330; *see* 42 U.S.C. § 405(g) ("The court shall have power to enter, *upon the pleadings and transcript of the record*, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security." (emphasis added)); *Law v. Barnhart*, 439 F. Supp. 2d 296, 308 (S.D.N.Y. 2006) ("This court may not consider that [new] medical record, because it cannot consider evidence that was not in the administrative record at the time the Appeals Council made its decision.").

A court may remand a case to the Commissioner for consideration of additional records "only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."  42 U.S.C. § 405(g). The Second Circuit has explained that a plaintiff seeking remand based on new evidence must show that (1) the evidence is "new and not merely cumulative of what is already in the record"; (2) the evidence is "material," meaning (a) it is "relevant to the claimant's condition during the time period for which benefits were denied," (b) it is "probative," and (c) there is "a reasonable possibility that the new evidence would have influenced the [Commissioner] to decide claimant's application differently"; and (3) there exists "good cause for [plaintiff's] failure to present the evidence earlier."  *Tirado v. Bowen*, 842 F.2d 595, 597 (2d Cir. 1988).

The second requirement, materiality, requires the new evidence to be relevant to the time period on or before the ALJ's decision.  *See* 20 C.F.R. § 404.970(a)(5) ("[T]he Appeals Council

receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision . . . ."); *see also Suttles v. Colvin*, 654 F. App'x 44, 47 (2d Cir. 2016); *Johnson v. Astrue*, 563 F. Supp. 2d 444, 461 (S.D.N.Y. 2008).  Although evidence that postdates an ALJ's determination is not *per se* irrelevant, records must relate to the claimant's condition during his or her application period to be considered material.  *See Klos v. Comm'r of Soc. Sec.*, 439 F. App'x 47, 48 (2d Cir. 2011) (declining to remand for consideration of new evidence because the records "did not indicate that [plaintiff's] condition was more serious than previously thought") (citing *Pollard*, 377 F.3d at 193).

To show the third requirement, good cause, a plaintiff "must adequately explain [his] failure to incorporate the proffered evidence into the administrative record."  *Lisa v. Sec'y of Dep't of Health & Hum. Servs. of U.S.*, 940 F.2d 40, 45 (2d Cir. 1991).  Courts in this circuit have found good cause where evidence emerges after the Commissioner issues his final determination.  *See id.* at 44 ("'Good cause' for failing to present evidence in a prior proceeding exists where . . . the evidence surfaces after the [Commissioner's] final decision and the claimant could not have obtained the evidence during the pendency of that proceeding."); *Collins v. Comm'r of Soc. Sec.*, 960 F. Supp. 2d 487, 501 (S.D.N.Y. 2013) ("Because all of this evidence was created after the ALJ's decision, there seems to be little question that it is 'new' and that 'good cause' exists for [plaintiff] failing to submit it to the ALJ.") (citation omitted); *Barone v. Comm'r of Soc. Sec.*, No. 17-CV-3689 (JS), 2019 WL 692936, at *8 (E.D.N.Y. Feb. 19, 2019) ("Plaintiff had good cause for not presenting the additional evidence sooner given that the Questionnaire was not in existence at the time that the ALJ issued her decision.").

In his pleadings, plaintiff suggests that the ALJ's physical residual functional capacity was erroneous in light of new evidence.  The new evidence consists of letters and medical records

issued between January 2020 and September 2020, after the Commissioner issued his final determination.  *See* Feb. 3 Ltr., at 2-9; Aug. 28 Ltr. at 2, 7-10; Sept. 28 Resp. at 2-6; Oct. 5 Resp. at 2-3.  Evidence "that post-date[s] the relevant time period and is not reasonably related to the time period adjudicated by the ALJ, is not ripe for consideration."  *Dees v. Comm'r of Soc. Sec.*, 413 F. Supp. 3d 158, 165 (E.D.N.Y. 2018).  Here, all but one of the medical records introduced by plaintiff relates to the status of his condition after the Commissioner's final determination.  Plaintiff's letter dated February 3, 2020 includes information about an emergency room visit on January 25, 2020 during which plaintiff received treatment for a head injury and leg contusion related to a fall.  *See* Feb. 3 Ltr. 2.  Plaintiff's August 28, 2020 submission contains a letter from Dr. Nilesh R. Patel and records showing that plaintiff visited Dr. Patel on July 9, 2020 and August 25, 2020, and providing information about plaintiff's diagnoses and vitals on those dates.  *See* Aug. 28 Ltr. 2, 6-10.  Plaintiff's submission dated September 28, 2020, includes the same information as the letter dated August 28, 2020.  *See* Sept. 28 Resp.  Plaintiff's submission dated October 5, 2020 contains results of an echocardiogram performed on September 28, 2020.  *See* Oct. 5 Resp. 2-3.  The lab results estimated plaintiff's left ventricle ejection fraction at twenty percent.  *Ibid.*  These records, while probative of plaintiff's medical condition in 2020, do not pertain to his alleged disability on or prior to October 31, 2018, when the ALJ issued her decision. *See* AR 12.  Because the records are not "relevant to the claimant's condition during the time period for which benefits were denied," *Tirado*, 842 F.2d at 597, they are not material and cannot serve as the basis for remand.

Finally, plaintiff submits a letter from Dr. Patel, dated August 12, 2020, regarding his heart condition.  *See* Aug. 28 Ltr. 2.  In that letter, Dr. Patel stated that plaintiff's latest echocardiogram, performed on June 17, 2019, showed his left ventricle ejection fraction in the range of thirty to

thirty-five percent. *Ibid.* That letter is not material because it is not relevant to plaintiff's condition during his disability insurance application—namely, the period between June 1, 2016 and the ALJ's decision on October 31, 2018. *See* AR 12-15. Dr. Patel's report relates to plaintiff's condition seven months after the ALJ's decision was issued. While Dr. Patel's report may illustrate a worsening of plaintiff's cardiac condition in that time, courts have held that evidence demonstrating an exacerbation of plaintiff's health does not warrant remand if it is not probative of the alleged period of disability. *See, e.g.*, *Vilardi v. Astrue*, 447 F. App'x 271, 272 (2d Cir. 2012) ("[Plaintiff's] reliance on evidence demonstrating a worsening of her condition . . . is of little value, because she was required to demonstrate that she was disabled as of March 31, 2007, the date on which she was last insured."); *Rosario v. Colvin*, No. 13-CV-5573 (NGG), 2015 WL 3862683, at *12 (E.D.N.Y. June 22, 2015) ("[The records] are not material to her case, as they occurred nearly seventeen months after the ALJ's decision"); *Collins*, 960 F. Supp. 2d at 501 ("Rather than shedding light on [plaintiff's] condition during the relevant time period, the new evidence suggests at most that his condition worsened after the ALJ's decision."); *Catrain v. Barnhart*, 325 F. Supp. 2d 183, 193 (E.D.N.Y. 2004) ("The psychiatric opinion . . . was prepared almost ten months after the closing period of the ALJ's inquiry and, while it supports plaintiff's claim of disability, it does not report on her condition at the relevant time period.").

Moreover, plaintiff fails to "to justify the delay in submitting these reports, and therefore has not met the statutory requirement of demonstrating good cause." *Schaal*, 134 F.3d at 506. According to Dr. Patel, the echocardiogram was performed on June 17, 2019, Aug. 28 Ltr. 2, several months before the Appeals Council's decision became final on November 4, 2019, AR 1. Because the evidence emerged prior to the Commissioner's determination, to establish a basis for remand, plaintiff had to "adequately explain the failure to incorporate the proffered evidence into

the administrative record." *Lisa*, 940 F.2d at 45.  Plaintiff has offered no explanation for this failure.  And *pro se* status, without more, does not constitute good cause for failure to timely submit evidence to the Social Security Administration.  *See, e.g.*, *Schaal*, 134 F.3d at 506; *Yucekus*, 829 F. App'x at 558.  Accordingly, plaintiff has not shown that the action should be remanded for the consideration of new evidence.

However, as defendant notes, plaintiff may file a new application for disability insurance benefits with the Social Security Administration based upon his current physical condition.  *See* Def.'s Mem. in Supp. of Mot. for J. on Pleadings 21 (Dkt. #14).  In connection with his new application, plaintiff may submit any new medical records or other evidence to show that his alleged worsening condition renders him disabled.  *See DeChirico v. Callahan*, 134 F.3d 1177, 1184 (2d Cir. 1998).

## IV.    Conclusion

The ALJ's opinion was legally sound and based on substantial evidence in the record.  Accordingly, the Commissioner's motion for judgment on the pleadings is granted.  The Clerk of Court is respectfully directed to enter judgment in favor of the Commissioner, dismiss the complaint, and mail a copy of this order to plaintiff.

SO ORDERED.

*/s/ Rachel Kovner*
RACHEL P. KOVNER
United States District Judge

Dated: May 18, 2022
        Brooklyn, New York